JAMES MARKS, PLAINTIFF IN ERROR, v. MICHAEL DICKSON AND ELIZABETH M. DICKSON.

In May, 1830, Congress passed an act (4 Stat. at L., 420) which gave the right of pre-emption to settlers on the public lands, but made null and void all assignments and transfers of the right of pre-emption prior to the issuance of patents. This act was to remain in force for one year.

In January, 1832, another act was passed, (4 Stat. at L., 496,) supplementary to the former, allowing certificates of purchase to be transferred, and patents to be issued in the name of the assignee.

In June, 1834, another act was passed, (4 Stat. at L., 678,) reviving the act of 1830.

The true construction of this act of 1834 is, not that it restored the prohibitory clause of 1830, but that it revived the supplement, together with the original act; and that, consequently, an assignment was good and legal before a patent was issued.

But it was necessary to enter the land at the land office, before the right of assignment accrued; and, therefore, assignments made before such entry were assignments of floats, and void.

A power, however, although executed before the location, was sufficient to justify an assignment made after the location, there being a tacit affirmance of the power, when it might have been set aside.

THIS case was brought up from the Supreme Court of Louisiana, by a writ of error issued under the twenty-fifth section of the judiciary act.

The facts are stated in the opinion of the court.

It was argued by *Mr. Benjamin* for the plaintiff in error, and by *Mr. Taylor* for the defendants.

*Mr. Benjamin* made three points:

I. The policy of Congress has been fixed and invariable, not to allow the beneficent purposes of the pre-emption laws to be defeated, nor its objects perverted to the profit of land speculators. Whether wise or unwise, this is the unmistakable policy of the law.

Under this point, *Mr. Benjamin* contended, that although the deed from Butler's attorney was dated after the location, yet the power to make it was executed before the location, whilst the interest was yet nothing but a float; and that such an arrangement was a mere device to elude and evade the law. For example: the power to sell, locate, and transfer, was executed on 17th July, 1840. The location was made on the 8th August, 1840. The deed to Dickson was executed on 25th November, 1840.

*Mr. Benjamin* reviewed several acts of Congress and cases, to show that such a device as this power, given prior to the location, was against the whole policy of the law.

II. The court erred in determining that when Congress, in 1834, revived the act of 1830, it also revived that of 1832.

An opinion to that effect was given in 1835, by Mr. Attorney General Butler, (2d Opinions, 701;) but no reasons are given for it. He simply says, "that the revival of the original law is to be considered as embracing the provisions engrafted thereon by the supplementary act of 23d January, 1832."

It is submitted that this opinion is utterly untenable.

It is not true that the act of 1832 engrafted any provision on that of 1830. On the contrary, the act of 1832 was a partial repeal of that of 1830.

The act of 1830 prohibited assignments of pre-emption rights prior to issuance of patents. The act of 1832 repealed this prohibition so far as to permit the assignment of certificates of purchase or final receipts.

In 1834, Congress re-enacts the law which prohibited assignments before issuance of patents. By what possible train of reasoning can it be shown that this act of 1834 is also to be controlled by that of 1832? The whole of the subsequent legislation shows the contrary. Every law since passed by Congress repeats the prohibition, as already shown.

The act of 1834 is to be construed just as if the entire act of 1830 had been copied into it. If this had been done, would any one pretend that the act of 1832 could control its interpretation?

III. The act of 1832, however, can have no possible application to the case before the court. That act, in its very terms, applies only to persons who purchased before its passage. It says, in words, that "persons who have purchased under the act of 1830," may transfer their certificates of purchase, and patents may issue to assignees.

The act of 1830 had expired by its own limitation on the 29th May, 1831. Nobody who had acquired rights under it could sell or assign before the issuing of the patents. On the 23d January, 1832, Congress, speaking of this expired law, says that those who have purchased under it may assign their certificates of purchase, notwithstanding the prohibition.

The law applied to a certain class of pre-existing cases. When those cases were settled, the law was *functus officio.*

Now, Butler was not a person who had purchased under the act of 1830. His pre-emption was established in 1836, under the act of 1834.

To apply the act of 1832 to his case, is to violate the language of the law, the rules of grammar, and the legislative intention as exhibited in long-continued and repeated expressions of the will of Congress.

*Mr. Taylor* made the following points:

The judgment of the court of the first instance in Louisiana was against the plaintiff, and in favor of the defendants. Upon an appeal to the Supreme Court of that State, this judgment was affirmed, on the ground that the revival of the act of 1830, by the act of 19th of June, 1834, was "to be considered as embracing the provisions engrafted thereon by the supplementary act of the 23d of January, 1832," "under the construction put upon the Congressional acts on this subject by the Attorney General of the United States;" for, say the court, "the officers of the Government appear to have uniformly acted on this construction," and "this construction, it appears to us, expresses the manifest intention or will of the law maker."

The only point before the court for review upon the writ of error to the Supreme Court of Louisiana in this case, is this:

Is there any error in the judgment of that court, based upon this construction of the acts of Congress, under which the land in controversy has been separated from the public domain, to satisfy a right of pre-emption growing up in virtue of settlement and cultivation prior to the 19th of June, 1834?

The defendants say there is no error, because—

I. The act of the 29th of May, 1830, and the supplementary acts of January 23d, 1832, and July 14th, 1832, constituted but one act; and any revival of the act of the 29th of May, 1830, in the absence of any declaration to the contrary, would necessarily carry with it the supplementary acts. (Sedgwick on Statute and Constitutional Law, pp. 247, 251, 255; 1st Cranch, 299.)

This view confirmed by the act of June 22d, 1838, which is cited by plaintiff's counsel for a different purpose. And,

II. The administration of the land system of the United States is vested in the Executive department of the Government, and the officers charged with the disposal of the public domain under the authority of acts of Congress are required and empowered to determine the construction of those acts so far as it relates to the extent and character of the rights claimed under them, and to be given, through their action, to individuals. This is a portion of the political power of the Government, and courts of justice never interfere with it. (Cousin *v.* Blanc's Ex.; 19 How., 206, 209; 2 Pet., 253; 12 Pet., 511; 9 How., 154.)

The decision of the Attorney General, and the action of the Land Department for a long series of years in conformity with it, is conclusive as to the right of a pre-emptor to sell the land embraced in his entry before the issuing of the patent.

A different conclusion would unsettle a vast number of titles,

and overthrow rights acquired upon the faith of the settled practice of the Land Department of the Government, dating back to the spring of 1835; and for what? To give success to an operation by which one seeks to obtain an unjust advantage over his neighbor, by dealing, with as full knowledge as was ever yet disclosed to the observation of a court of justice, with one who stands confessed as the perpetrator of an attempted fraud.

Mr. Justice CATRON delivered the opinion of the court.

This cause is brought here by a writ of error to the Supreme Court of Louisiana, which, by its judgment, construed the acts of Congress of 1830, 1832, and 1834, securing pre-emption rights to actual settlers on the public lands.

The facts giving rise to the questions decided are these: John Butler and Elkin T. Jones resided on the same quarter section of land, lying in the parish of Claiborne, Louisiana; and having duly proved their residence on the land, as required by the acts of Congress, were allowed to purchase jointly at the proper land office the quarter section on which they resided.

Being entitled to additional land, Jones and Butler obtained a certificate, known as a float, authorizing them to enter a quarter section. Butler sold his float to Murrill in 1837; Murrill sold to Wood in 1838, and Wood sold to Dickson in 1839. The land was located in August, 1840, in Butler's name, by Bullard, who held a power from Butler to locate and sell it.

And in November, 1840, Butler, by his attorney in fact, Bullard, conveyed to William Dickson. In April, 1843, a joint patent issued in favor of Butler and Jones for the quarter section. In 1851, Butler again sold his undivided moiety of the land to James Marks, and conveyed to him in due form. The Supreme Court of Louisiana held, that the assignment made in August, 1840, to William Dickson, was lawfully made, and that Marks had no equity to sustain his petition, in which he demanded partition and possession. His petition was dismissed in the State courts.

If the assignment of the entry to Dickson was valid, then the judgment below must be affirmed; on the other hand, if the assignment made by Bullard, as Butler's attorney in fact, was made in violation of the acts of Congress, then it cannot be set up as a defence against the deed made to Marks in 1851. This is the only question that can be revised here on this writ of error to the proceeding in the Supreme Court of Louisiana. Its decision depends on the true meaning of the acts of Congress referred to.

The act of 1830 (sec. 3) provides that all assignments and

transfers of the right of pre-emption given by that act, prior to issuing of the patent, shall be null and void.

In 1832 a supplementary act was passed, which recites the act of 1830, and declares that all persons who have purchased under the act may assign and transfer their certificates of purchase, or final receipts, anything in the act of 1830 to the contrary notwithstanding.

The act of June 19, 1834, revived the act of 1830, and continued it in force for two years without referring to the act of 1832. If this act was made part of that of 1830, then the revival of the latter carried with it no incapacity in the preemptor to assign his certificate of purchase.

A difficulty arose in the General Land Office, as to the effect of the revival of the act of 1830 by the act of 1834; and whether the act of 1830, as revived, included the provision of the act of 1832. The Commissioner referred the matter to the Secretary of the Treasury for his decision; and this officer presented the question to the Attorney General for his official opinion, who decided that the acts of 1830 and 1832 stood together as one provision; and being revived by the act of 1834, the intention of Congress was to confer on the purchaser the power to sell before the patent issued.

This opinion was given in March, 1835, and has been followed at the General Land Office ever since; and as Butler's claim originated under the act of 1834, it was governed at the land office by that decision.

We think the construction then given was, in effect, the true one. Before the prohibition was made by the act of 1830, the purchaser, when he had obtained his final certificate, acquired with it a right to sell the land he had purchased in all cases, nor has that right ever been questioned by Congress, where entries had been made in the ordinary operations of the land office; so that the act of 1832 *repealed* the prohibition imposed on those having a pre-emption, and placed those who purchased under it on the footing of other purchasers.

The act of 1832 provided that patents might issue to assignees; but this provision does not affect the present case, as the transfer of the entry was valid, and bound Butler from its date, and vested his equitable title in Dickson and his heirs, which was not defeated by the patent. Such would have been the rights of the parties, had the prohibitory clause not been passed, and so their rights stood after its repeal.

The object of the Legislature is manifest. It was intended to prevent speculation by dealings for rights of preference before the public lands were in the market. The speculator acquired power over choice spots, by procuring occu-

pants to seat themselves on them, and who abandoned them as soon as the land was entered under their pre-emption rights, and the speculation accomplished. Nothing could be more easily done than this, if contracts of this description could be enforced. The act of 1830, however, proved to be of little avail; and then came the act of 1838, (5 Stat., 251,) which compelled the pre-emptor to swear that he had not made an agreement by which the title might inure to the benefit of any one except himself, or that he would transfer it to another at any subsequent time. This was preliminary to the allowing of his entry, and discloses the policy of Congress, but it has no application in this cause, as this claim was founded on the act of 1834.

The contract preceding the entry made by Butler with Murrill was merely void; and so were the agreements of Wood and Dickson for the float before its location. But after the land was entered by Butler, he had power to affirm his contract of sale at his option, by conveying the land, and which sale bound Butler, and concludes Marks.

We order that the judgment of the Supreme Court of Louisiana be affirmed, with costs.